## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AB TECHNOLOGIES, LLC, *et al.,* | Case No. 23-11132 (TMH) |
| Reorganized Debtor. | (Jointly Administered) |
| ALEXANDRE ZYNGIER,<br>in his Capacity as the Creditor Trustee of the<br>Creditor Trust, | |
| Plaintiff, | Adv. Proc. No. 25-50527 (TMH) |
| v. | |
| JOHN G. MELO, | |
| Defendant. | |

## ANSWER TO COMPLAINT

John G. Melo ("Melo" or the "Defendant"), by and through its undersigned counsel, hereby answers the Complaint brought by Alexandre Zyngier, in his Capacity as the Creditor Trustee of the Creditor Trust (the "Trustee" or "Plaintiff"), as follows:

### GENERAL DENIAL AND RESERVATION OF RIGHTS

Except as otherwise expressly admitted in this Answer, Defendant denies each and every allegation contained in the complaint. Defendant states that the headings and sub-headings throughout the complaint, and reproduced in this Answer, do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response is deemed required, the allegations in the headings and sub-headings of the complaint are denied. To the extent not otherwise defined in the specific responses herein, the capitalized terms used in this Answer have the same meanings ascribed to them in the complaint. To the extent Defendant uses capitalized

terms in this Answer also defined in the complaint, that use is not an acknowledgement of admission of any characterization Plaintiff may ascribe to such terms in the complaint. Defendant denies that Plaintiff is entitled to any of the relief sought by the complaint. Defendant expressly reserves the right to seek to amend and/or supplement this Answer as may be necessary.

## NATURE OF THE ACTION

1.     This paragraph purports to be a summary of the events giving rise to this action to which no response is required.  To the extent a response is deemed required, Defendant denies the allegations in this paragraph except admits that he served as Amyris's former Chief Executive Officer, President, and Director and that Amyris entered into the Givaudan Transaction.

2.     This paragraph purports to be a summary of certain written documents underlying the Givaudan Transaction.  Those documents are the best evidence of the terms they contain and Melo respectfully refers the Court to the meaning, if any, of the referenced documents and for a complete statement of their terms.  Defendant denies any allegations in this paragraph that are inconsistent with those terms.

3.     This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, admits only that Melo, as an officer of Amyris, owed fiduciary duties to Amyris under Delaware law.

4.     This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, admits only that Melo, as a director of Amyris, owed fiduciary duties to Amyris under Delaware law.

5.     Defendant denies all allegations in this paragraph, including those contained in subparagraphs.

6.     Defendant denies all allegations in this paragraph.

2

7.    Defendant denies all allegations in this paragraph.

8.    Denied.

9.    Denied.

10.    Defendant admits the allegations in the first sentence of this paragraph upon information and belief.  Defendant denies the allegations in the second sentence for lack of sufficient knowledge.  The third and fourth sentences of this paragraph contain legal conclusions to which no response is required.

11.    Admitted. The $74 million in compensation was a performance-based stock option grant that never paid out.

## NON-PARTIES

12.    Admitted upon information and belief.

13.    Admitted upon information and belief.

14.    Admitted upon information and belief.

15.    Admitted upon information and belief.

16.    Admitted upon information and belief.

17.    Admitted upon information and belief.

18.    Admitted upon information and belief.

19.    Admitted upon information and belief.

20.    Admitted upon information and belief.

21.    Admitted upon information and belief.

22.    Admitted upon information and belief.

## JURISDICTION AND VENUE

23.    Admitted.

24.     Denied for lack of sufficient knowledge.

25.     Admitted.

26.     Defendant lacks knowledge as to the Trustee's citizenship and on that basis denies the allegations in this paragraph.

27.     This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that this Court has subject matter jurisdiction over this action pursuant to 10 Del. C. § 3104 but admits that pursuant to 10 Del. C. § 3114(a) Melo is amenable to service in the State of Delaware in his capacity as a former director of Amyris.

28.     Defendant does not consent to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

29.     Admitted.

30.     This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that venue is proper in this action this Court pursuant to 28 U.S.C. § 1408 because the instant matter is not "a case under title 11" but an adversary proceeding.  Defendant admits that venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409.

## ALLEGATIONS OF FACT APPLICABLE TO ALL CLAIMS

### Description of the Debtors' Operations and History

31.     This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

32.     This paragraph contains no allegations against Defendant to which a response is required.    To the extent a respond is deemed required, the allegations are admitted upon information and belief.

33.     This paragraph contains no allegations against Defendant to which a response is required.    To the extent a respond is deemed required, the allegations are admitted upon information and belief.

34.     This paragraph contains no allegations against Defendant to which a response is required.    To the extent a respond is deemed required, the allegations are admitted upon information and belief.

35.     This paragraph contains no allegations against Defendant to which a response is required.    To the extent a respond is deemed required, the allegations are admitted upon information and belief.

36.     This paragraph contains no allegations against Defendant to which a response is required.    To the extent a respond is deemed required, the allegations are admitted upon information and belief.

37.     This paragraph contains no allegations against Defendant to which a response is required.    To the extent a respond is deemed required, the allegations are admitted upon information and belief.

**The History of Squalane: From Sharks to Sustainability**

38.     This paragraph contains no allegations against Defendant to which a response is required.    To the extent a respond is deemed required, the allegations are admitted upon information and belief.

39.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

40.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

41.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

42.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

43.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

44.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

45.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

**Hemisqualane: The Clean Beauty, Plant-Based Silicone Alternative**

46.     This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

47.     This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

**Consumer Facing Businesses**

48.     This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

49.     This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

50.     This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

51.     This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

52.     This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

53.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

54.    This paragraph contains no allegations against Defendant to which a response is required.  To the extent a respond is deemed required, the allegations are admitted upon information and belief.

55.    Denied as stated. The Board approved a strategy for consumer brand expansion. The Audit Committee reviewed and recommended to the Board for approval each new brand business acquisition or expansion.

56.    Denied as stated.  The consumer brand portfolio delivered one of the more efficient consumer brand growth to capital invested performance ratios of the beauty industry and was recognized in 2022 by WWD (one of the industry leading publications) as the best performing small cap beauty portfolios in the world.

## Financial Difficulties

57.    Admitted. By way of further answer, it is the norm for a transformative company like Amyris, especially one that, like Amyris, pioneered a new industry to industrial scale, to require extensive capital for maintenance and experience years of losses and rely on substantial outside investment before it records sustainable profits.

58.    Admitted. This performance was the result of a liquidity crisis significantly reducing the company's ability to invest in growth.

59.    Admitted. By way of further answer, the losses were mainly driven by significant supply chain disruptions after the COVID pandemic, supply chain disruptions that impacted most of the beauty industry.

60.     Denied as stated. A severe liquidity crisis led to under investment combined with a portfolio of mostly new brands that were in their growth phase and therefore required investment to reach profitability.  The diagram purports to be a demonstrative summary to which no response is required.  To the extent a response is deemed required, its purported content is denied as incomplete.

61.     Denied that Melo received compensation "[n]otwithstanding any financial hardships Amyris may have been experiencing.  Melo received compensation for his work performed as a director and officer of Amyris.

62.     This paragraph purports to characterize a document appearing at Bankr. D.I. 335. That document is the best evidence of the terms contained therein, and Melo respectfully refers the Court to the meaning, if any, of the referenced document and for a complete statement of its terms.  Defendant denies any allegations in this paragraph that are inconsistent with those terms.

**Amyris's Bankruptcy Proceedings; The Chapter 11 Plan; and the Creditor Trust's
Right to Purse Claims Previously Held or Controlled by the Debtors.**

63.     Admitted.

64.     Denied that the Debtors are presently still operating as debtors-in-possession.

65.     This paragraph purports to characterize a document appearing at Bankr. D.I. 893. That document is the best evidence of the terms contained therein, and Melo respectfully refers the Court to the meaning, if any, of the referenced document and for a complete statement of its terms.  Defendant denies any allegations in this paragraph that are inconsistent with those terms.

66.     Admitted upon information and belief.

67.     The allegations regarding what modifications or modifications that may have benefited affected creditors are material or immaterial are legal conclusions to which no response is required.  To the extent a response is deemed required, the document referenced in this paragraph

9

is the best evidence of the terms contained therein, and Defendant respectfully refers the Court to the meaning, if any, of that document and for a complete statement of its terms. Defendant denies any allegations in this paragraph that are inconsistent with those terms.

68.     Admitted upon information and belief.

69.     Admitted upon information and belief.

70.     This paragraph purports to characterize provisions of the Plan. That document is the best evidence of the terms contained therein, and Defendant respectfully refers the Court to the meaning, if any, of the Plan and for a complete statement of its terms. Defendant denies any allegations in this paragraph that are inconsistent with the terms of the Plan. Defendant also denies the allegation that the Plan was the result of "global settlement reached after extensive good-faith negotiations" for lack of sufficient knowledge.

71.     The document speaks for itself.

72.     The document speaks for itself.

73.     The document speaks for itself.

74.     The document speaks for itself.

75.     The document speaks for itself.

76.     Denied as stated. Defendant lacks knowledge regarding the "consideration" bargained for and whether such claimed "consideration" constitutes consideration under Delaware law.

77.     Admitted only that the Plan provides for the release of certain "Released Parties" that include the Debtors' then current and former directors, managers, officers, employees, professionals, and shareholders, except for those specifically designated as Excluded Parties.

78.     Admitted only that Melo was designated as an Excluded Party under the Plan.  The conclusion that the Plan "deliberately, explicitly, and specifically" excluded is denied for lack of sufficient knowledge and as a legal conclusion.  By way of further statement, the Plan to which this paragraph refers is the best evidence of the terms contained therein, and Defendant respectfully refers the Court to the meaning, if any, of that document and for a complete statement of its terms.

79.     This paragraph purports to characterize certain documents that speak for themselves.  They are the best evidence of the terms contained therein, and Defendant respectfully refers the Court to their meaning, if any, and for a complete statement of their terms.  Defendant denies any allegations in this paragraph that are inconsistent with their terms.

80.     Defendant respectfully refers the Court to the Plan's meaning, if any, and for a complete statement of its terms.  Defendant denies any allegations in this paragraph that are inconsistent with the Plan's terms.

81.     The allegation in this paragraph is a legal conclusion to which no response is required.  To the extent a response is deemed required, the document referenced in this paragraph is the best evidence of the terms contained therein, and Defendant respectfully refers the Court to the meaning, if any, of that document and for a complete statement of its terms.  Defendant denies any allegations in this paragraph that are inconsistent with those terms.

**Fiduciary Duties, Exculpation, and Indemnification**

82.     Defendant admits that Delaware law imposes certain fiduciary duties on corporate directors and officers of legal entities governed by Delaware law and that Delaware law recognizes the duty of care and the duty of loyalty. Also admitted that fiduciaries must act in good faith in carrying out their duties as fiduciaries. The remaining allegations in this paragraph are denied as legal conclusions and also because they are not directed at Defendant.

83.     The allegations in this paragraph are legal conclusions to which no response is required.

84.     The allegations in this paragraph, including all subparagraphs, are legal conclusions to which no response is required.  To the extent a response is deemed required, Defendant states he denies breaching the fiduciary duties owed to Amyris and leaves Plaintiff to his burden.

85.     The allegations in this paragraph are legal conclusions to which no response is required.

86.     This paragraph purports to quote from certain document entitled "Code of Business Conduct and Ethics" that speaks for itself.  It is the best evidence of the terms contained therein, and Defendant respectfully refers the Court to its meaning, if any, and for a complete statement of its terms.  By way of further answer, the "Code of Business Conduct and Ethics" is not attached to the complaint and Defendant lacks sufficient knowledge regarding whether and, if so, when the "Code of Business Conduct and Ethics" was amended or altered.  The version currently available online at the website referenced in the complaint at footnote eight suggests that it became effective as of some day in December 2024 and, consequently, after any act complained of in the complaint and    after    the    Trustee    was    appointed.    *See*    https://cdn.prod.website-files.com/68b9b5443b3de7086c3b0fa3/6901e0b00288333ad8a753c1_Code%20of%20Business%20Conduct%20and%20Ethics%20(Dec%202024).pdf.    According to footnote eight of the complaint, the Trustee *utilized a* "Code of Business Conduct and Ethics" available online on *March 24, 2025, a date, again,* after any act complained of in the complaint and after Melo had already left the company.  The "Code of Business Conduct and Ethics" referenced in the complaint on its face thus is inapplicable to the complaint. For the foregoing reasons, the allegations in this paragraph are denied.

87.     The allegations in this paragraph are denied for the same reasons stated in the preceding paragraph.

88.     This paragraph purports to characterize "Restated Certificate of Incorporation (as amended from time to time)".  That document is not attached to the complaint and Defendant therefore lacks sufficient information regarding the contents of the "Restated Certificate of Incorporation (as amended from time to time)" to which the complaint refers.  On that basis the allegations in this paragraph are denied.  By way of further answer, the "Restated Certificate of Incorporation (as amended from time to time)" would appear to be a that speaks for itself.  It is the best evidence of the terms contained therein, and Defendant respectfully refers the Court to its meaning, if any, and for a complete statement of its terms.  Defendant denies any allegations in this paragraph that are inconsistent with those terms.

89.     The allegations in this paragraph are legal conclusions to which no response is required.

### MELO BREACHED HIS FIDUCIARY DUTIES BY RECKLESSLY PUSHING THROUGH THE FUNDAMENTALLY FLAWED GIVAUDAN TRANSACTION

#### Precursor to the Givaudan Transaction – the Aprinnova Joint Venture

90.     Admitted.

91.     Admitted.

92.     Admitted.

93.     Denied as stated.  Admitted only that time was of the essence in closing the Givaudan Transaction.

#### The Closing and Terms of the Givaudan Transaction

94.     Admitted.

13

95.     This paragraph purports to be a summary of certain written documents pertaining to the Givaudan Transaction.  Those documents are the best evidence of the terms they contain, and Melo respectfully refers the Court to the meaning, if any, of the referenced documents and for a complete statement of their terms.  Defendant denies any allegations in this paragraph that are inconsistent with those terms.  Admitted only that the Givaudan Transaction had an earn-out component.

96.     This paragraph purports to be a summary of certain written documents pertaining to the Givaudan Transaction.  Those documents are the best evidence of the terms they contain, and Melo respectfully refers the Court to the meaning, if any, of the referenced documents and for a complete statement of their terms.  Defendant denies any allegations in this paragraph that are inconsistent with those terms.

97.     Denied as stated.

98.     Denied.

### Melo Mismanaged the Negotiations for the
### Givaudan Transaction Through Misleading Narratives

99.     Admitted that Melo, given his position at and the duties he owed to Amyris, played a central role in the Givaudan Transaction, and that Rytokoski supported the Givaudan Transaction.  Admitted also that Rytokoski did not actively negotiate the price or specific financial terms in the transaction.  Whether Rytokoski was "relying on assistance from Pollack" is denied because the allegation is directed at someone other than Defendant and Defendant does not know to what extent Rytokoski did or did not rely on Pollack's assistance. Admitted that Pollack at the time of the Givaudan Transaction was Amyris's Vice President of Financial Planning and Analysis and provided and prepared data and materials related to that transaction. The remaining allegations in this paragraph are denied.

100.    Admitted upon information and belief except that, with respect to any purported quotes from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

101.    Admitted upon information and belief except that, with respect to any purported quotes from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

102.    Denied for lack of sufficient knowledge when Givaudan commenced its due diligence.

103.    Denied as stated.  Defendant has no knowledge of the specific intent of any third parties in taking or not taking any actions.  With respect to any purported quotes from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

104.    Denied as stated. Admitted only that Melo, given his position at and the duties he owed to Amyris in his capacity as director and officer under Delaware law, played a central role in the Givaudan Transaction.

105.    Denied as stated. Admitted only that Melo, given his position at and the duties he owed to Amyris, played a central role in the Givaudan Transaction.  With respect to any purported quotes from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

106.    Denied.

107.    Denied.

108.    Denied.  With respect to any purported quotes from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

109.    Denied.  With respect to any purported quotes or other information taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.  By way of further answer, there is a difference from the draft to the final revenue and volumes to correct an omission and/or error regarding the accurate representation of volume used by Amyris's brands that was not represented in the draft scenarios.

**The Flawed August 31, 2022 Presentation**

110.    Denied.  With respect to any purported quotes or other information taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

> **a. Dramatically Inflated and Reckless Volume and Revenue Projections That Lacked Any Reasonable Basis**

111.    This paragraph purports to contain a summary of certain events and actions surrounding the Givaudan Transaction to which no response is required.  To the extent a response is deemed required, Defendant denies the Trustee's characterizations.  With respect to any purported quotes or other information taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

112.    Denied.

113.    This paragraph purports to contain a summary of certain events and actions surrounding the Givaudan Transaction to which no response is required.  To the extent a response is deemed required, Defendant denies the Trustee's characterizations.  To the extent the Trustee is

relying on any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof, and leaves the Trustee to his burden.

114.    Denied.

115.    Denied.

      **b.    Melo Omitted a Key Disclosure Regarding Amyris's Contractual Obligation to Supply Farnesene—a Key Input in Squalene to the Aprinnova Joint Venture at a Fixed Price**

116.    This paragraph purports to contain a summary of certain events and actions surrounding the Givaudan Transaction to which no response is required.  To the extent a response is deemed required, Defendant denies the Trustee's characterizations, including any words used in quotation marks that are not defined.  With respect to any purported quotes taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.  All other allegations within this paragraph are specifically denied.  By way of further answer, the Board was fully aware of the then prevalent farnesene and squalane production costs and the roadmap for future production costs along with the underlying assumptions. This was reviewed in detail at each quarterly Board meeting as part of the operational performance discussion led by the Chief Operating Officer of the company. The material for these discussions was prepared by the Chief Operating Officer and reviewed by the CFO.

117.    Denied. By way of further answer, the document(s) from which the quotes in this paragraph purport to be taken is/are not attached to the complaint and the allegations in this paragraph are denied for lack of sufficient knowledge.  With respect to any document referenced in this complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

118.    Denied.  With respect to any purported quotes taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

119.    Defendant does not know what "his COGS decision" refers to and on that basis denies this paragraph. The Board received quarterly updates regarding the actual cost of production for each product, including farnesene and Squalane, and had clear information regarding future forecasts and necessary actions and investments to achieve these future forecasts. The information for these quarterly updates was prepared by the Chief Operating Officer and reviewed by the CFO.

120.    Denied.

121.    Denied.

122.    Denied that Melo made any misrepresentations.  With respect to any purported quotes from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

123.    Denied that Defendant was involved in any deception to the Board.  With respect to any purported quotes taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.  All other allegations within this paragraph are specifically denied.

124.    The allegations in this paragraph are denied. Admitted only that Melo believed the proposed transaction would generate the cash infusion Amyris needed at the time to meet its liquidity needs.  By way of further answer, it was not Melo's job to draft or present transactional documents.

125.    Denied.  Melo met with Givaudan several times at their Geneva Switzerland Headquarters including with the CFO where the proposed potential pricing was discussed.

126.    This paragraph purports to refer to and characterize certain documents not attached to the complaint and Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.  Admitted only that Givaudan extended an offer to Amyris on or about November 17, 2022.

127.    Denied.  By way of further answer, initial offers or term sheets for transactional deals typically are contingent on additional diligence, further review, and are subject to change.

128.    Denied. Melo discussed each step of the process with Givaudan openly with the head of the Audit Committee and with the CFO.

129.    This paragraph purports to contain a summary of certain events and actions surrounding the Givaudan Transaction to which no response is required.  To the extent a response is deemed required, Defendant denies the Trustee's characterizations.  With respect to any purported quotes or other information taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

130.    This paragraph purports to contain a summary of certain events and actions surrounding the Givaudan Transaction to which no response is required.  To the extent a response is deemed required, Defendant denies the Trustee's characterizations.  With respect to any purported quotes or other information taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

131.    This paragraph purports to contain a summary of certain events and actions surrounding the Givaudan Transaction to which no response is required.  To the extent a response is deemed required, Defendant denies the Trustee's characterizations.  The Chair of the Audit Committee, the CFO, and several board members were made aware of each step of the Givaudan transaction negotiation. With respect to any purported quotes or other information taken from any

documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

132.    Denied as stated.  The Chair of the Audit Committee, the CFO, and several board members were made aware of each step of the Givaudan transaction negotiation.

133.    Denied as stated.  The Chair of the Audit Committee, the CFO, and several board members were made aware of each step of the Givaudan transaction negotiation.

134.    The allegations in this paragraph are directed against non-parties and no response is required.  To the extent a response is deemed required, Defendant denies the allegations in this paragraph for lack of sufficient knowledge.  By way of further answer, Defendant lack sufficient knowledge about Novotny's intentions.

135.    Denied.  Rytokoski in his role as the lead interface with Givaudan was in regular contact with Givaudan. With respect to any purported quotes taken from any documents not attached to the complaint, Defendant refers the Court to their meaning, if any, and terms as being the best evidence thereof.

136.    Denied.

### Concerns Over Feasibility and Financial Viability of the Givaudan Transaction Surface Among Company Leadership

137.    Denied as stated and for lack of sufficient knowledge. This transaction was supported by capacity available and planned that supported an existing business.

138.    Denied as stated and because Defendant does not know to whom the phrase "certain Amyris officers and employees" refers.  By way of further answer, Amyris actual COGS during this period were based on a temporary use of contract manufacturing in Spain while Amyris's precision fermentation facility located in Barra Bonita, Brazil, was completing construction. There was a clear plan that underpins the forecast COGS based on actual cost of farnesene production at

the Brotas, Brazil, facility owned and operated by DSM where Amyris has contractual access to farnesene volume. This paragraph is a gross misstatement and characterization production plans, forecasts, and COGS.

139.   This paragraph purports to quote from document(s) not attached to the complaint that speak(s) for itself.  It is/they are the best evidence of the terms contained therein, and Defendant respectfully refers the Court to its/their meaning, if any, and for a complete statement of its/their terms.

140.   This paragraph purports to quote from document(s) not attached to the complaint that speak(s) for itself/themselves.  It is/they are the best evidence of the terms contained therein, and Defendant respectfully refers the Court to its/their meaning, if any, and for a complete statement of its/their terms.

141.   This paragraph purports to quote from document(s) not attached to the complaint that speak(s) for itself/themselves.  It is/they are the best evidence of the terms contained therein, and Defendant respectfully refers the Court to its/their meaning, if any, and for a complete statement of its/their terms.

142.   This paragraph purports to quote from document(s) not attached to the complaint that speak(s) for itself/themselves.  It is/they are the best evidence of the terms contained therein, and Defendant respectfully refers the Court to its/their meaning, if any, and for a complete statement of its/their terms.

143.   This paragraph purports to be the Trustee's summary of his characterization of how the Earnout worked to which no response is required.  To the extent a response is deemed required, Defendant respectfully refers the Court to the document describing the structure of the Earnout for a complete statement of its terms as the bests evidence.

144.    Denied.

145.    Admitted, upon information and belief, that Amyris reached an agreement in principle and that thereafter, on February 13, 2023, Amyris's Board Audit Committee held a meeting to consider the Givaudan Transaction.  Also admitted that, at the February 13, 2023, meeting, the Board Audit Committee approved of the Givaudan Transaction and resolved to recommend it to the Board.  That the meeting lasted approximately 45 minutes, is admitted based on information and belief.  Defendant denies that the Board Audit Committee was documented "with no detailed notes or comprehensive minutes" because that statement calls for a legal conclusion to which no response is required.  To the extent a response is deemed required, Defendant states that he did not take the notes or minutes at said committee and was not in attendance.  Further, there is nothing unusual about meeting minutes not to contain detailed notes or comprehensive analyses.  The remainder of the allegations in this paragraph appear to be derived from documents not attached to the complaint that speak for themselves.  Defendant respectfully refers the Court to their meaning, if any, and for a complete statement of their terms and content.

146.    Admitted only that the Board Audit Committee recommended approval of the Givaudan Transaction to Amyris's full Board.

147.    Admitted upon information and belief.

148.    The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response to them is deemed required, Defendant admits only that Amyris's Board formally approved the Givaudan Transaction after consultation with the Board Audit Committee.

**The Board Did Not Receive Information Regarding
the Negative Margin on the Supply Agreement**

149.    The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response to them is deemed required, Melo states that he complied with his fiduciary duties and denies any allegation to the contrary.  The allegations that other Amyris's senior management did not inform the Board about certain alleged facts are directed at unidentified senior management members and therefore no response from Defendant is required. By way of further answer, all of Amyris's senior management.

150.    This paragraph purports to quote from documents not attached to the complaint that speak for themselves.  They are the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to their meaning, if any, and for a complete statement of their terms. Defendant lacks sufficient knowledge to respond to the allegations that Kieftenbeld failed to make certain material disclosures to the Amyris Board.

151.    Denied as stated. Admitted only that Melo, given his position at and the duties he owed to Amyris in his capacity as director and officer under Delaware law, played a central role in the Givaudan Transaction.

152.    This paragraph purports to quote from documents not attached to the complaint that speak for themselves.  They are the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to their meaning, if any, and for a complete statement of their terms. Defendant lacks sufficient knowledge to respond to the allegations that Kieftenbeld "failed to relay … critical information" to the Amyris Board.

153.    Denied.

23

154.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself. That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content.

155.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself. That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content.

**The Board Did Not Receive Any Detail Regarding the Likelihood
of the Earnout-or any Portion thereof – Being Realized**

156.    Denied.

157.    Denied. The Earnout was based on the continued planned performance and related use of Squalane of the Amyris brands and the successful operation of the Barra Bonita Facility and access to Brotas farnasene. Whether Amyris executed on these assumptions was the responsibility of Amyris's management after the closing of the Givaudan Transaction.

158.    Admitted.

159.    Admitted.

160.    Denied. Apprinova's actual sales are not relevant to the complaint as they are not a like for like comparison with the volume and revenue assumptions in the Givaudan Transaction. The Apprinnova sales do not include sales to Amyris's brands that represent a material component of the volume and revenue in the Givaudan Transaction.

161.    The allegations in this paragraph are denied.

162.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself. That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content. By way of further answer, this statement is incorrect and a misrepresentation. The Givaudan Transaction

included Amyris-owned brand sales, and the current performance did not include these sales. Admitted only that Melo kept the Board informed.

163.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content. Admitted only that Melo kept the Board informed.

164.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content. Admitted only that Melo kept the Board informed.

165.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content. By way of further answer, this paragraph contains allegations directed at parties other than Melo, Rytokoski and Pollack, to which Melo is not required to respond.

166.    Admitted only that Melo made both public statements and private statements to the Board that the Givaudan Transaction's terms were achievable.  Admitted further that Amyris ultimately agreed to a $150 million Earnout.  The remaining allegations in this paragraph are denied.

167.    The allegations in this paragraph are denied except Melo admits that the Board approved the Givaudan Transaction.

168.    The allegations in this paragraph are denied except Melo admits that the Board approved the Givaudan Transaction.

**Givaudan Forces Material Changes to The Givaudan Transaction While
Melo Conceals Amyris's Outside Legal Counsel's Opposition from the Board**

169.    The allegations in this paragraph are denied. Melo was not desperate to close the Givaudan Transaction, Amyris' Board was pushing to get the Givaudan Transaction done. The Givaudan Transaction was a core component of a liquidity plan approved by the Board to support the company's growth needs.

170.    The allegations in this paragraph are denied except that Defendant admits that Givaudan requested changes shortly before the Givaudan Transaction closed.

171.    The allegations in this paragraph are denied.  The Audit Committee independently discussed Givaudan's requested changes without any involvement by Melo and both Amyris's CFO Kieftenbeld and its General Counsel Choi were involved in these discussions with the Audit Committee. The Audit Committee ultimately presented these changes to the Amyris' Board, which approved them without any input by Melo.

172.    The allegations in this paragraph are denied except Defendant admits that Amyris's outside legal counsel, Shearman & Sterling LLP, appeared to have reservations about last-minute changes to certain of the Givaudan Transaction's terms.  By way of further answer, Amyris's board was kept apprised of these changes and Shearman & Sterling LLP's position regarding these changes and in spite of them and Shearman & Sterling LLP's position approved the Givaudan Transaction.  It is denied that "Melo ultimately conceded to these unfavorable modifications".  As already noted, the Audit Committee reviewed and discussed all transactions. Melo did not participate or prepare any of the documentation reviewed and discussed at the Audit Committee. This was to ensure an independent review and discussion with material prepared and presented by Amyris's CFO as well as an independent discussions and decisions by the Audit Committee. As the Trustee knows, Audit Committee notes and follow up e-mails demonstrate that the Audit

Committee discussed the key changes to the agreement with Givaudan before recommending them to the full Board. Further, it is not uncommon for parties to request or agree to last-minute changes before deals close.

173.    Admitted only that Givaudan requested an expansion of the right of first refusal ("ROFR") and a change of control provisions in the Asset Purchase Agreement and License Agreement.  The remaining allegations and characterizations are denied.

174.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content. Admitted only that Shearman & Sterling LLP kept Choi, Novotny, Kieftenbeld, and others informed about their position.

175.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content.

176.    Denied for lack of knowledge what Kieftenbeld and Choi did or did not do.

177.    Denied.

178.    Denied for lack of knowledge what Choi felt.  Admitted only that Choi sent an email to the Audit Committee concerning the proposed changes to the terms of Givaudan Transaction. The remaining allegations and characterizations are denied. The communication from Choi was encouraged and the Audit Committee met and discussed all last-minute changes and key terms of the Givaudan Transaction. After discussion, they decided to recommend the transaction to the full Board. These discussions were without the presence of Melo to ensure no influence and full independence in the review and recommendation to the Board.

179.    Denied for lack of sufficient knowledge concerning what Panchadsaram and Choi discussed or what Panchadsaram requested of Choi.

180.    Admitted only that, on February 21, 2023, Melo signed the Asset Purchase Agreement License Agreement and that that agreement pertained to the Givaudan Transaction. Choi's purported response appears to have been taken from a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content.

181.    Denied as stated.  The Board's Audit Committee was informed about the proposed changes to the terms of Givaudan Transaction and Choi informed the Board's Audit Committee of outside counsel's position.  This the Trustee admits in paragraph 178 of the complaint. The outside counsel opinion was discussed openly in the Audit Committee review with Choi and the CFO. There was no influence of Melo in the Audit Committee review of the transaction and there was no information withheld by Melo.

182.    Admitted only that close to the closing of the Givaudan Transaction, certain changes were made pertaining to Givaudan's the right of first refusal, change of control provisions in the Asset Purchase Agreement and License Agreement, and the Earnout mechanism.  The remaining allegations and characterizations are denied.

183.    The revenue targets are contained in a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content.  On that basis, the allegations in this paragraph are denied. This paragraph is incorrect and mischaracterizes the targets. Actual volume did not include Amyris-owned brands use of Squalane and Hemi-squalane,

while the Givaudan Transaction did include them. These are not like for like comparisons and, like most of the complaint, is an inaccurate characterization of the facts.

184.    Denied for lack of knowledge what specifically Pollack thought or felt.  Admitted only that Pollack and Melo communicated concerning the Earnout thresholds and that Pollack expressed concerns.

185.    Defendant does not recall if he informed the Board directly of changes to the Earnout structure and on that basis denies the allegation in this paragraph.

### Melo's Self-Dealing and Incentives to Act In His Own Self-Interest

186.    Denied.

187.    The allegations in this paragraph are admitted except that Melo denies the characterization that his interests with both the long-term strategic direction of Amyris and its stockholders were only "purportedly" aligned.

188.    Admitted.

189.    Melo denies the allegations in this paragraph because they represent the Trustee's subjective and self-serving narrative. Melo admits only that he received a stock award exceeding $70 million in the year 2021 and the stock was awarded to him by Amyris in recognition of his leadership and the company's performance at the time. This was a performance award that was never fully realized and had no connection to the Givaudan transaction.

190.    Denied.

191.    Denied.

192.    Admitted only that Melo and Rytokoski would meet from time to time.  The remailing allegations in this paragraph are denied.

193.    Denied for lack of sufficient knowledge concerning what Rytokoski and Pollack discussed or what Rytokoski and Pollack did or did not do.

194.    The allegations in this paragraph are denied.  Denied further because Melo does not know what Pollack considered or considers "ridiculous" in connection with assumptions.

195.    Denied as stated.    Amyris's actual cost was a temporary basis impacted significantly by the Ukraine war and the resulting high energy costs in Spain. There was no expectation that Spain or a CMO was a sustainable producer of farnesene. This information was consistent with all updates provided by the Chief Operating Officer to the Board and management and was the basis by which Melo based future decisions about product production costs.

196.    Denied.

197.    Denied.

**Melo Knew The Givaudan Transaction Was Financially Injurious
to Amyris But Attempted To Save His Credibility With
The Board By Obtaining A Post Hoc Valuation**

198.    Denied.

199.    Denied. Givaudan management informed Melo they had a limitation based on available free cash flow how much up-front cash they could use to fund the transaction. This was the key driver of timing and overall front cash provided by Givaudan. The allegations in this paragraph are overly exaggerated and distorted by the Trustee.

200.    The allegations in this paragraph are denied except Melo admits only that the Givaudan Transaction was designed to "maximize value" for Amyris and its stakeholders.

201.    The allegations in this paragraph are denied except Melo admits only that Jefferies LLC prepared a valuation of the Givaudan Transaction.  That report was prepared at the request of the Board, not at the request of Melo. Further, the second sentence of this paragraph purports to

quote from a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content.

202.    The allegations in this paragraph are denied except Melo admits only that the Jefferies LLC valuation report of the Givaudan Transaction was shared with the Board, which had requested it.  Melo denies the allegation that "Jefferies performed no diligence on the Aprinnova business" for lack of sufficient knowledge of what diligence Jefferies did or did not perform.  By way of further answer, Jefferies LLC is a company heavily involved in the specialty chemical industry and was qualified to issue the report.

203.    Denied for lack of sufficient knowledge.

204.    Denied that Defendant "obtained Jefferies' post hoc analysis to justify the Givaudan Transaction."  As already noted, the Jeffries' report was commissioned by the Amyris Board, not by Melo.  The Board discussed the use of an advisor and agreed this was not necessary based on the depth of relationship and history Givaudan had with Amyris and a desire by certain Board members to avoid the cost of using an investment banker in a transaction that could be completed without an investment banker.

205.    Denied.

### MELO'S RECKLESS REAL ESTATE LEASE DECISIONS CONSTITUTES SEPARATE BREACH OF FIDUCIARY DUTY

206.    Denied, except that Melo admits that he entered into certain real estate leases on behalf of Amyris.

207.    Denied, except that Melo admits that he entered into certain real estate leases on behalf of Amyris in order to expand Amyris's consumer footprint into high-profile retail locations.  Further, the second sentence of this paragraph purports to quote from a document not attached to

the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and full content.

208.    The allegations in the first sentence of this paragraph are denied because the terms "detailed analysis" and "demonstrated need" are subjective and not defined.  The allegations in the second sentence of this paragraph are denied except that Melo admits that Amyris had experienced success with its consumer-facing initiatives and generated market enthusiasm. Melo had extensive experience in retailing and consumer facing business prior to Amyris as a senior executive with BP, leading the operations of over 14,000 retail stores and one of the leading consumer fuel brands in the United States.

209.    Denied as stated and an inaccurate characterization. Melo held a leadership team off-site meeting in Miami and reviewed the retail strategy in detail along with a site visit of the retail stores with the executive team. Each lease was reviewed and approved by the Audit Committee and present by the CFO and General Counsel of the company to the directors. Each of the lease transactions were reviewed by the Board and recommended by the Audit Committee for approval.

210.    Denied as stated.

211.    Admitted.

212.    Admitted.

213.    Admitted, except that Melo denies the characterization of the use of the lease being "purported."

214.    Admitted.

215.    Admitted.

## Melo Undertook No Meaningful Due Diligence

216.    Denied. Each of the facilities were visited by Amyris management including the CFO. The CFO was involved in the final selection of the NY site and was also directly involved in specific aspects of the lease negotiation.

217.    Denied. Defendant has no recollection of Alvarez ever stating that entering the retail space was "ridiculous".

218.    This paragraph purports to quote from a document not attached to the complaint that speaks for itself.  That document is the best evidence of the terms contained therein, and Defendant therefore respectfully refers the Court to its meaning, if any, and content.

219.    Denied. There is no basis for the statement that Onda stores were not a reasonable comparable businesses.

220.    Denied.  The Board had given Melo authority and discretion to enter into transactions under a certain monetary threshold without seeking prior Board approval.  Also denied because the term "governance protocols" is vague and ambiguous and the allegations in this paragraph do not identify which "governance protocols" purportedly were implicated.

221.    Denied. Melo had approval from the Board to proceed with the real estate strategy and specifically the Miami and NY locations.

222.    Denied.

223.    Denied, except that Melo admits that the retail leases were signed prior to Audit Committee meeting that occurred on February 22, 2022. There was approval of the strategy to enter into retail sites to execute within approved limits.

224.    Denied.

### The Board Rubber-Stamping the Miami and
### New York Leases Does Not Excuse Melo's Conduct

225.    Denied.

226.    Denied as stated.  Admitted only that the Audit recommended to the Board to approve the Miami and New York Leases.

227.    The allegations in this paragraph are denied as stated.  Admitted only that the Board had a discussion concerning the Miami and New York Leases during which Melo participated. Further, this paragraph purports to quote from certain written documents.  Those documents are the best evidence of the terms they contain, and Melo respectfully refers the Court to the meaning, if any, of the referenced documents and for a complete statement of their terms.

228.    The allegations in this paragraph are denied because they are the Trustee's characterizations of actions to which no response is required and, to the extent a response is deemed required, those characterizations are denied.  Also denied because Melo lacks sufficient knowledge regarding what James McCann would have been willing to do or not.

229.    Denied as stated.  Admitted only that the Board ratified the Miami and New York Leases.

230.    Denied. Melo lacks sufficient knowledge regarding what certain unidentified board members came to realize and when they did so.  Also denied that Melo withheld "critical information."

231.    The allegations in this paragraph are denied as stated.  Admitted only that the leases ultimately were terminated.

232.    Denied.

## CAUSES OF ACTION

## COUNT I

**Breach of Fiduciary Duty of Care Relating to the Givaudan Transaction
Against Melo as President and Chief Executive Officer of Amyris**

233.    Defendant realleges and incorporates the above responses as if fully set forth herein.

234.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

235.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

236.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

237.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

238.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he engaged in unethical conduct and denies that breached Amyris's Code of Business Conduct and Ethics on the basis that the Trustee has failed to sufficiently identify that document.

239.    Denied.

240.     This paragraph purports to state a summary of the relief that Plaintiff seeks to which no response is required.  To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to the relief he seeks.

## COUNT II

**Breach of Fiduciary Duty of Loyalty Relating to The Givaudan Transaction
Against Melo as President and Chief Executive Officer of Amyris**

241.     Defendant realleges and incorporates the above responses as if fully set forth herein.

242.     This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

243.     This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

244.     This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he engaged in unethical conduct and denies that breached Amyris's Code of Business Conduct and Ethics on the basis that the Trustee has failed to sufficiently identify that document.

245.     Denied.

246.     This paragraph purports to state a summary of the relief that Plaintiff seeks to which no response is required.  To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to the relief he seeks.

### COUNT III

**Breach of Fiduciary Duty of Loyalty Relating to the Givaudan Transaction
Against Melo as a Director of Amyris**

247.    Defendant realleges and incorporates the above responses as if fully set forth herein.

248.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

249.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

250.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he engaged in unethical conduct and denies that breached Amyris's Code of Business Conduct and Ethics on the basis that the Trustee has failed to sufficiently identify that document.

251.    Denied.

252.    This paragraph purports to state a summary of the relief that Plaintiff seeks to which no response is required.  To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to the relief he seeks.

### COUNT IV

**Breach of Fiduciary Duty of Care Relating to the Miami and New York Leases
Against Melo as President and Chief Executive Officer of Amyris**

253.    Defendant realleges and incorporates the above responses as if fully set forth herein.

254.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

255.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

256.    Denied. A market analysis of alternative lease options and costs was produced in the local market. The design team provided estimates of the buildout costs prior to the signing of the leases.

257.    Denied.

258.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he engaged in unethical conduct and denies that breached Amyris's Code of Business Conduct and Ethics on the basis that the Trustee has failed to sufficiently identify that document.

259.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

260.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

261.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

262.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he breached his fiduciary duties to Amyris under Delaware law.

263.    This paragraph purports to state a summary of the relief that Plaintiff seeks to which no response is required.  To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to the relief he seeks.

## COUNT V

### Corporate Waste

264.    Defendant realleges and incorporates the above responses as if fully set forth herein.

265.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he engaged in corporate waste.

266.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he engaged in corporate waste.

267.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that he engaged in corporate waste.

268.    This paragraph purports to state a summary of the relief that Plaintiff seeks to which no response is required.  To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to the relief he seeks.

## COUNT VI

### Equitable Subordination Under 11 U.S.C. § 510(c)

269.    Defendant realleges and incorporates the above responses as if fully set forth herein.

270.    Admitted that this paragraph correctly characterizes the content of 11 U.S.C. § 510(c).  Denied that equitable subordination is properly asserted as a cause of action.  Equitable

subordination is a remedy not a cause of action.  *See*, *e.g.*, *Cohen v. KB Mezzanine Fund II, LP* (*In re SubMicron Sys. Corp.*), 432 F.3d 448, 454 (3d Cir. Jan. 6, 2006) (noting that equitable subordination is a remedy "grounded in the bankruptcy courts' equitable authority); *Coastal Group, Inc. v. Westholme Partners*, 1996 U.S. Dist. LEXIS 23137, *26-27 (W.D.N.J Oct. 3, 1996) ("Plaintiff's assertion of a cause of action for equitable subordination is entirely misplaced. Equitable subordination is a remedy …").

271.    Admitted that the allegation that "Melo breached his fiduciary duties to Amyris" is "generally set forth" in the complaint but denied that he did so.  Also denied that Melo engaged in inequitable conduct that resulted in injury to Amyris and its creditors or that Melo caused any damages resulting in injury to Amyris and its creditors.

272.    Admitted.

273.    This paragraph purports to summarize provisions of the Separation Agreement. That document is the best evidence of the terms contained therein, and Defendant respectfully refers the Court to the meaning, if any, of the Separation Agreement and for a complete statement of its terms and content.  Defendant denies any allegations in this paragraph that are inconsistent with the terms of the Separation Agreement.

274.    Admitted.

275.    Admitted.

276.    Admitted.

277.    Admitted.

278.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that equitable subordination of the Melo Proof of Claim is appropriate.

279.    This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies that equitable subordination of the Melo Proof of Claim is appropriate but admits that such determination requires notice and a hearing. Denied that equitable subordination is properly asserted as a cause of action. Consequently, Count VI fails to state a claim upon which relief can be granted.

## PRAYER FOR RELIEF

The WHEREFORE clause purports to state a summary of the relief to which Plaintiff claims to be entitled to which no response is required. To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to the relief he seeks.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses and reserves the right to assert other defenses and claims, when or if they become appropriate and/or available in this action.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's requested relief is barred, in whole or in part, by the doctrine of waiver.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's requested relief is barred, in whole or in part, by the doctrine of acquiescence.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's requested relief is barred, in whole or in part, by the doctrine of frustration of purpose.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's requested relief is barred, in whole or in part, because the Company ratified the actions complained of.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's requested relief is barred, in whole or in part, because he failed to join necessary parties to this action without whom complete relief cannot be granted.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's requested relief is barred, in whole or in part, because, to the extent the Court finds that Amyris and its stakeholders were damaged as a result of the Givaudan Transaction or the signing of the retail leases, the damages was proximately caused by someone other than Defendant.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's requested relief is barred, in whole or in part, because Melo's actions and decisions are protected by the business judgment rule.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's requested relief is barred, in whole or in part, because, in making decisions, Melo relied on the advice of counsel and other professionals.

**PRAYER FOR RELIEF**

WHEREFORE, Melo respectfully asks the Court dismiss this action against him with prejudice, award him reasonable costs and fees incurred in defending against this action, and grant such other and further relief as is just and proper.

Dated:  February 24, 2026
      Wilmington, Delaware

**KLEIN LLC**

*/s/ Julia B. Klein*
Julia B. Klein (Bar No. 5198)
225 West 14th Street, Suite 100
Wilmington, Delaware 19801
klein@kleinllc.com
Phone: (302) 438-0456

*Counsel for John Melo*

43